| **Summons** | CIVIL DOCKET NO. 2384CV00641 | **Trial Court of Massachusetts** <br> **The Superior Court** |
|---|---|---|

CASE NAME:

Juan De Los Santos

Plaintiff(s)

vs.

American arbitration association and
Service Employees International
Union Local 615 32BJ

Defendant(s)

John E. Powers, III, Acting Clerk of Courts
Suffolk Superior Civil, County

COURT NAME & ADDRESS:
**Three Pemberton Square**
**Boston, MA. 02108**

THIS SUMMONS IS DIRECTED TO Service Employees International Union Local 615 32BJ _____ (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the Suffolk Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Suffolk Superior Court (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

b) Delivering or mailing **a copy** of your response to the Plaintiff's attorney/Plaintiff at the following address:
James E. Neyman and Associates
76 Canal Street, Suite 302
Boston, MA 02114

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Court no more than 10 days after sending your Answer.

Joseph P.

Deputy Sheriff Suffolk County
5-24-2

3. (cont.) Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure**. If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings.

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi E. Brieger _____ , Chief Justice on ___ May  17 ___ , 20 23 . (Seal)

Acting Clerk

**Note:** The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____           Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

Date:

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS

SUFFOLK SUPERIOR COURT
CA NO.: NEW FILING

23-64

|  |  |
|---|---|
| JUAN DE LOS SANTOS<br>PLAINTIFF,<br><br>V.<br><br>AMERICAN ARBITRATION<br>ASSOCIATION,<br>SERVICE EMPLOYEES<br>INTERNATIONAL UNION<br>LOCAL 615 32BJ<br>DEFENDANTS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

JOHN E. POWERS III
ACTING CLERK MAGISTRATE
2023 MAR 16 P 1:31
SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE

## PLAINTIFF'S COMPLAINT FOR JUDICIAL REVIEW TO VACATE ARBITRATION AWARD PURSUANT TO M.G.L. C. 150C § 11

Now comes Plaintiff, Juan De Los Santos (Hereinafter "Plaintiff") who submits this complaint by counsel seeking to review/vacate an arbitration award from the Service Employees International Union, District 615, 32BJ and SEIU Local 32BJ (hereinafter "Defendant") pursuant to M.G.L. c. 150C § 11 and/or the defendant the American Arbitration Association.

### Parties

1. Plaintiff is an individual residing at all relevant times to the case at bar in Dorchester, Suffolk County, MA 02121.

2. Defendant Service Employees International Union District is an entity representing the rights of its members involving work-related issues such as Plaintiff with its principal place of business at 26 West Street, Boston Suffolk County, MA 02111.

3. Defendant American Arbitration Association is a business entity specializing in arbitration, mediation, and other forms of dispute resolution between parties including union members such as the Plaintiff with its principal place of business at 200 State Street, #7 Boston, Suffolk County, MA 02109.

### Facts

4. Juan De Los Santos was employed by Boston University, a college, (hereinafter, BU), from September 26, 2006, until November 18, 2021, primarily as a custodian and who also operated the Zamboni at the University's hockey rink.

5. Plaintiff had not received any disciplinary action during his fifteen (15) years of employment prior to his separation. Plaintiff had never been accused of any inappropriate behavior toward any individual while working at BU during his long tenure at BU by BU prior to an allegation on or about March of 2021 by a part-time employee also employed at BU.

6. Plaintiff was a member of the Union, Local 615 32BJ through BU, which had a collective bargaining agreement (CBA) with Boston University.

7. On or about March 18, 2021, a part-time custodial employee of Boston University employee for less than 2 years filed a complaint pursuant to Boston University's Misconduct Policy involving Title IX, against the Plaintiff, a full-time custodian who denied all allegations of misconduct presented including allegations dating back well over a year prior to the co-worker's complaint.

8. The complaint was, made by the coworker to his supervisor on the same day, he was meeting for disciplinary action due to his consistent tardiness and/or other work performance issues. After the meeting, the co-worker for the first time made a complaint

against the Plaintiff for improper conduct that he had never mentioned previously to that date and only did so when faced with discipline. His complaint was never corroborated by a single witness nor coworker.

9.  On November 18, 2021, after an alleged investigation and hearing, the University informed Plaintiff that he was found Responsible for alleged policy violations and BU terminated him from his employment, stating the grounds as "a sanction for violating the University's... Title IX Policy".

10. The Plaintiff immediately notified the Union and on November 30, 2021, the Union filed a grievance on Plaintiff's behalf alleging a violation of the CBA and stated that Plaintiff had been terminated without just cause.

11. On January 7, 2022, in accordance with the CBA and by agreement of the Parties involved, a Step 3 grievance meeting was held.

12. On January 19, 2022, Boston University answered the grievance by letter and denied the Union's grievance.

13. After the grievance was denied, the Union eventually moved to arbitration.

14. Without consulting with Plaintiff, the defendant, Union's counsel agreed that there would be no live testimony presented at the arbitration and that the evidentiary record, in this case, would consist solely of the documents and facts set forth in the Stipulated Record without discussion or consent with the Plaintiff prior to making said determination..

15. This ill-advised and illogical decision by the defendant union under the circumstances presented precluded Plaintiff an opportunity to examine witnesses and file affidavits at Arbitration which was essential to a case that was solely determined by the arbitrator based on the basis of credibility, and as a result unduly undermined the plaintiff's

arbitration rights and procedure as he was not allowed to testify due to the defendant Union's ill-advised decision and failure to comply with its duty of fair representation.

16. The Plaintiff received the decision by the Arbitrator on or about Feb. 15, 2023, was based on which version of events or nonevents to credit and depended almost entirely on the credibility that needed to be provided via the testimony of parties, witnesses, etc. in a live manner.

17. The defendant Arbitrator improperly opined that the prior findings of the hearing panel were entitled to substantial weight because it was not done in an impartial manner as required. The arbitrator, as a basis for his decision, relied on the investigation from BU as carte blanch and in essence improperly made no further investigation into the matter as a basis for his decision and in essence, adopted the prior BU decision and failed to demonstrate any impartiality as a result of his improper bias and improper analysis and failed to consider any of the evidence provided by the Union in Plaintiff's favor nor more importantly his 3 witnesses who by affidavit as long time coworkers with the defendant were percipient witnesses of his daily activities for many many years. There was no reference in the decision as to their affidavit's merit or non-merit nor credibility or effect on his decision ultimately flawed and adverse to the Plaintiff.

18. The matter in arbitration was all about the credibility of the two parties. Counsel for Plaintiff for reasons unbeknownst filed the arbitration to be determined on the papers, rather than allowing Plaintiff a full hearing to assess his and his witnesses and his accuser's credibility.

19. On or about October 19th, 2022, an adverse decision was rendered against Plaintiff from which this timely complaint for relief from the Court stems from.

20. In that decision, the arbitrator stated that Plaintiff had in fact engaged in instances of misconduct and stated that the accuser believed over Plaintiff despite the absence of any corroborating witnesses or testimony.

21. The Arbitrator repeatedly referenced a failure to appear the underlying decision inferring that it gave weight to the findings when in reality an appeal could only be made under 4 very limited circumstances; likely difficult to satisfy,  which he failed to reference nor that the Plaintiff after immediately contacting the defendant Union post decision was ultimately told by the Union it would file a grievance on his behalf after he personally communicated with and/or went to the Union's Boston location immediately post-decision.

22. The defendant's arbitrator repeated the implication that the Plaintiff's failure to appeal caused a detriment to Plaintiff, and said assessment could not be further from the truth because the standard for appeal in an arbitration matter is extremely narrow in scope and there are only four circumstances where an appeal can be pursued.

23. The arbitrator's interpretation completely overlooks the limitations and narrowness of an appeal and instead uses the failure to do so to improperly confirm the validity of the findings.

24. The claimant was advised by the Union that a grievance would be filed on his behalf based on the decision. Plaintiff was under the belief that based under the limitations of a Title IX appeal, his rights would be protected and paid for by the Union by filing a grievance which was filed less than two weeks after the decision (See Exhibit A).

25. The arbitrator further stated that the investigation and/or hearing process was fair and proper.

26. Additionally, to support his biased findings based on the prior hearing, the arbitrator made the incorrect analysis that the accuser was credible in his allegations despite never making any complaint of misconduct against Plaintiff until on or about March 18th, 2021 well over a year after the alleged transgressions by Plaintiff allegedly occurred. And only did so when faced with disciplinary action for frequent tardiness and not at the time of a performance review as suggested by the arbitrator.

27. Obviously, had the arbitrator considered the accuser initiating misconduct against Plaintiff when faced with discipline including the potential for termination the accuser's credibility would clearly be at issue as any objective analysis would support the accuser was seeking to invent or allege a cause of action that would potentially negate the discipline he was faced with which was done so at the expense of Plaintiff to satisfy his goal of maintaining his employment. Instead, the arbitrator opined that the believed the accuser because he had made his complaints during a performance review which he deemed credible. Unfortunately, this is an erroneous analysis of what actually transpired as he was facing discipline including possible termination and no mention was made by the accuser until late the same day in a separate encounter with his supervisor which was a fatal analysis by the arbitrator and union that should never have occurred and was a significant basis for the Arbitrators adverse decision.

28. Not only did he maintain his employment, Plaintiff alleges that the accuser/co-worker was never disciplined, but actually received a full-time schedule, according to Plaintiff and in the affidavit of Osman, listed by the Arbitrator but never mentioned, was not in compliance with Union nor BU hiring protocol.

29. The arbitrator concedes that during his (15) years of employment, Plaintiff had no prior
    misconduct and/or disciplinary actions, but gave it no weight due to the severity of the
    accuser's allegations he immediately conceded he believed based on the prior BU
    decision instead of questioning the credibility of what occurred in such circumstances, he
    instead concluded that serious misconduct regardless of Plaintiff's spotless record and the
    accuser's motive to say anything to save his job when facing discipline satisfied
    Plaintiff's termination, yet never questions credibility which he believes is the most
    important factor under such pretenses, which a neutral fact finder would obviously
    consider such behavior alleged to be inconsistent with a fifteen-year (15) employee
    (Plaintiff) with an unblemished employment record.

30. The failure of the arbitrator to provide any impartiality such as giving weight to witness
    statements provided by longstanding employees who interacted with Plaintiff virtually on
    a daily basis, the content of which is not mentioned at all in his decision. In fact, the most
    telling affidavit provided by co-worker Osman Barrero is not even referenced in his
    exhibits or decision. Bottom line is, the arbitrator improperly relied solely on the prior
    decision and did not entertain any additional evidence presented at the arbitration.

31. As to the Defendant Union, at the outset, agreeing to an arbitration on the papers meaning
    no live testimony being presented was a serious error of judgment that defies logic as the
    entire claim of the Plaintiff presented through his grievance revolves around the
    credibility of the Plaintiff, the co-worker/accuser, witnesses, none of which would be
    heard based on the Union's decision to forgo that process. It is illogical where the
    arbitrator has even clearly stated the primary issue is the credibility of the parties that the
    Union would even consider conducting an arbitration simply on the papers. Typically,

such a process would generally occur if there was a procedural issue that was contested

by the parties, such that no live testimony was needed which was not the case here.

32. Plaintiff was ready, willing, and able, and prepared to testify. Plaintiff was not given the

opportunity to take part in the decision to deprive him of testifying and both Plaintiff and

his counsel went to great lengths to ensure that he would be able to testify which was

unilaterally denied by the Union with no reasonable explanation nor his consent.

33. Additionally, at least one of the witness statements provided by Plaintiff's co-worker

Osman Barrero was inexplicably redacted, which Plaintiff never knew about until

recently receiving the exhibits arising from this case and was never told by the Union

prior to his receipt.

34. The Union has a duty of fair representation, and there is absolutely no evidence to show

that protocol occurred because Plaintiff was deprived the opportunity to testify and cross-

examine the accuser and bring long-time co-workers who would attest to his character

and have the ability to demonstrate the real motive of the accuser, which was to save his

own job.

35. Additionally, when the plaintiff learned that the accuser was recently terminated by BU

for performance issues, which Plaintiff asserted supported his credibility the Union

dismissed/refused to entertain in any manner presenting this to the Arbitrator who was

undoubtedly unaware of this critical material fact in assessing one's credibility and which

the Union determined incorrectly had no bearing on the outcome of the case.

## Legal Standard

36. M.G.L. c. 150 C Section 11. (a) Upon application of a party, the superior court shall

vacate an Arbitration award if:—(1) the award was procured by corruption, fraud or other

undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or

corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; (3)

the arbitrators exceeded their powers or rendered an award requiring a person to commit

an act or engage in conduct prohibited by state or federal law; (4) the arbitrators refused

to postpone the hearing upon a sufficient cause being shown therefor or refused to hear

evidence material to the controversy or otherwise so conducted the hearing, contrary to

the provisions of section five as to prejudice substantially the rights of a party;

37. "Plain error requires appellants to demonstrate: '(1) an error occurred (2) which was clear

or obvious ... (3) affected [his] substantial rights [and] (4) seriously impaired the fairness,

integrity, or public reputation of the judicial proceedings.' " Nat'l Cas. Co. v. First State

Ins. Grp., 430 F.3d 492, 499 (1st Cir. 2005).

38. The "duty of fair representation mandates that a union conduct at least a 'minimal

investigation' into an employee's grievance." Reynolds v. Steward St. Elizabeth's Med.

Ctr. of Bos., Inc., 364 F. Supp. 3d 37 (D. Mass. 2019).

## Application of Legal Standard

39. The Arbitration award was procured by evidence of partiality because the Arbitrator

accepted without impartiality the underlying decision of Title IX by Dan Schorr, Esq.

adverse to the Plaintiff despite no corroborating witness testimony provided by any other

employee witnessing misconduct to the employee making such assertions.

40. The Arbitrator refused to hear evidence that is pertinent and material to the matter at bar.

In the matter at hand, Counsel for the Union, without the knowledge and consent of

Plaintiff, filed for arbitration on the papers, thus precluding Plaintiff from a hearing on

the matter that is implicit on the credibility of the two parties.

41. The arbitration award was procured by evidence of partiality because the Arbitrator and/or the Union ignored and/or redacted an affidavit in support of Plaintiff on the matter. Plaintiff filed an affidavit in support of his character from an employee at Boston University. This affidavit was not listed as an exhibit in the Arbitration, and it is unclear if the Arbitrator took this affidavit into consideration while rendering their judgment.

42. The Arbitrator erred in their decision because the Arbitrator did not consider all pertinent and material information on the matter. For reasons unknown to Plaintiff, his attorney in the arbitration matter filed for arbitration on the papers. Plaintiff offered an affidavit in support of his credibility in the pending matter. For some reason, the affidavit was redacted, and not considered in the decision as it is not listed as an exhibit in the arbitrator's decision.

43. In applying the plain error rule, the refusal and/or redacted affidavit in support of Plaintiff was a clear and obvious error that affected Plaintiff's rights and impaired the fairness of the Arbitration proceeding. By not allowing Plaintiff to submit an affidavit to support his character in a matter that revolves around credibility, substantially affected Plaintiff's right to a fair arbitration, and due to the refusal and/or redaction of the affidavit, impacted the fairness of the arbitration proceeding.

44. The failure of Defendant's arbitrator to give any weight beyond the underlying BU decision was plain error and led to an adverse decision by undue means as further illustrated herein.

45. The Defendant Union failed in its duty of fair representation by not conducting at least a minimal investigation into the accuser. At the outset, the hearing stated that the accuser was in for a performance review, if the Union had conducted even the slightest of

investigations in the matter, such as speaking to the Plaintiff it would have been clear that

the accuser was not for a performance review when his complaint was made, but for a

disciplinary proceeding based on his frequent tardiness( which Plaintiff had, in fact, told

the Union prior to the Arbitration). Had the Union conducted at least a minimal

investigation in the matter, this and other pertinent material information such as the

accuser not being disciplined and getting a full-time job after Plaintiff was fired and

failing to inquire as to the accuser's termination for performance which should have been

uncovered and presented at Arbitration as well as other assertions delineated herein, all

satisfying the prerequisites of a blatant failure to provide the proper duty of fair

representation which contributed to the demise of the Plaintiff's Arbitration proceeding.

## Causes of Action

(Each cause of action specifically incorporates by reference all of those paragraphs previously

set forth)

### First Cause of Action

46. This is an action by the Plaintiff, Juan De Los Santos, against Defendant, American

    Arbitration Association to vacate the Arbitration Decision.

### Second Cause of Action

47. This is an action by the Plaintiff, Juan De Los Santos, against Defendant, SEIU Local 615

    32BJ, for failure to comply with its  Duty of Fair Representation.

### Demands for Relief

Wherefore, Plaintiff, Juan De Los Santos, demands judgment against the Defendant,

Service Employees International Union, District 615, 32BJ, and defendant American

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 23-641 New Filing | Trial Court of Massachusetts The Superior Court |
|---|---|---|

COUNTY Suffolk

**Plaintiff** Juan De Los Santos

**ADDRESS:**

**Plaintiff Attorney:** James E. Neyman
**ADDRESS:** 76 Canal Street Suite 302 Boston MA 02114

**BBO:** 555229

**Defendant:** American Arbitration Association
**ADDRESS:** 200 State Street, Boston MA 02109
Service Employees International Union Local 615
26 West Street, Boston MA 02111

**Defendant Attorney:**
**ADDRESS:**

**BBO:**

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

CODE NO. E05
TYPE OF ACTION (specify)
TRACK
HAS A JURY CLAIM BEEN MADE?
☐ YES  ☐ NO

*If "Other" please describe:

Is there a claim under G.L. c. 93A?
☐ YES  ☒ NO

Is there a class action under Mass. R. Civ. P. 23?
☐ YES  ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**

A. Documented medical expenses to date
1. Total hospital expenses
2. Total doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses (describe below)

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date
C. Documented property damages to date
D. Reasonably anticipated future medical and hospital expenses
E. Reasonably anticipated lost wages
F. Other documented items of damages (describe below)

TOTAL (A-F): $0.00

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
Reinstatement And/or Awarded Back Pay

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Unrepresented Plaintiff: X    Date: 3/16/23

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney/Unrepresented Plaintiff: X    Date: 3/16/23

SC0001: 1/22/2021    www.mass.gov/courts