UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUAN DE LOS SANTOS )<br>    PLAINTIFF, )<br>V. )<br>  )<br>TRUSTEES OF )<br>BOSTON UNIVERSITY, )<br>SERVICE EMPLOYEES )<br>INTERNATIONAL UNION )<br>LOCAL 615 32BJ )<br>DEFENDANTS, ) | No. 23-cv-11305-DJC<br>(Motion to Amend Allowed<br>January 9, 2024) |

**PLAINTIFF'S AMENDED COMPLAINT FOR JUDICIAL REVIEW TO VACATE THE ARBITRATION DECISION**

Now comes Plaintiff, Juan De Los Santos (Hereinafter "Plaintiff"") who submits this amended complaint by counsel seeking judicial review to vacate the arbitration decision against the Service Employees International Union, District 615, 32BJ and SEIU Local 32BJ (hereinafter "Defendant") pursuant to M.G.L. c. 150C § 11 and/or the newly amended defendant, Trustees of Boston University, Plaintiff's former employer for roughly 15 years, who Plaintiff moves to add to his Complaint.

**Parties**

1. 1. Plaintiff is an individual residing at all relevant times to the case at bar in Dorchester, Suffolk County, MA 02121.

2. Defendant Service Employees International Union District is an entity representing the rights of its members involving work-related issues such as Plaintiff with its local MA principal place of business at 26 West Street, Boston, Suffolk County, MA 02111.

3. Defendant Trustees of Boston University (BU) is a University and/or higher educational institution located at One Silber Way, Boston, MA 02215, and was the employer of

Plaintiff who worked in its custodial department for over 15 years prior to his wrongful termination/separation of employ by this defendant.

## Facts

4. Juan De Los Santos was employed by Boston University, a college and or university of higher education, (hereinafter, BU), from September 26, 2006, until November 19, 2021, primarily as a custodian/maintenance worker who also operated the Zamboni at the University's hockey rink.

5. Plaintiff had not received any disciplinary action during his fifteen (15) years of employment prior to his separation arising from the underlying matter which is the basis of plaintiff's Plaintiff had never been accused of any inappropriate behavior toward any individual employee or otherwise at BU while working at BU during his long tenure at BU prior to an allegation on or about March of 2021 by a part-time employee also employed at BU.

6. Plaintiff was a member of the Union, Local 615 32BJ through BU, which had a collective bargaining agreement (CBA) with Boston University.

7. On or about March 18, 2021, a part-time custodial employee of Boston University employee for less than 2 years filed a complaint pursuant to Boston University's Misconduct Policy involving Title IX, against the Plaintiff, a full-time custodian who denied all allegations of misconduct presented including allegations dating back well over a year prior to the co-worker making his complaint.

8. The complaint was made by the coworker to Plaintiff's supervisor coincidentally on the same day, he was meeting for disciplinary action due to his consistent tardiness and/or other work performance issues. After the meeting, the co-worker for the first time made a complaint against the Plaintiff for improper conduct that he had never mentioned previously to that date and only did so when faced with discipline. His complaint was

never corroborated by a single witness nor coworker and was not made until an extensive period of time had passed as to the alleged events.

9. On November 18, 2021, after an alleged investigation and hearing, the University informed Plaintiff that he was found Responsible for alleged policy violations and BU terminated him from his employment, stating the grounds as "a sanction for violating the University's... Title IX Policy".

10. The Plaintiff immediately notified the Union and on or about November 30, 2021, the Union filed a grievance on Plaintiff's behalf alleging a violation of the CBA and stated that Plaintiff had been terminated without just cause.

11. On January 7, 2022, in accordance with the CBA and by agreement of the Parties involved, a Step 3 grievance meeting was held.

12. On January 19, 2022, defendant Boston University answered the grievance by letter and denied the co-defendant Union's grievance.

13. After the grievance was denied, the Defendant Union and Defendant Boston University eventually moved to arbitration, as Defendant Boston University refused to reverse its decision.

14. Without consulting with Plaintiff, the defendant, Union's counsel made an agreement with Boston University that there would be no live testimony presented at the arbitration and that the evidentiary record, in this case, would consist solely of the documents and facts set forth in the Stipulated Record without discussion or consent with the Plaintiff prior to making said determination who was completely oblivious of the defendants illogical gambit.

15. The defendant Union failed to adhere to basic tenets that rose to a level beyond mere negligence in its failure to adhere to its obligation to the Plaintiff with its duty to provide fair representation as evidenced by its deficient investigation, willfully misinforming the

Grievant plaintiff once arbitration was agreed to and failing to communicate strategy and/or decisions related to the grievance and Arbitration process of the plaintiff placing him in a no-win situation.

16. This ill-advised and illogical decision by the defendant union under the circumstances presented precluded Plaintiff an opportunity to testify, examine witnesses and file affidavits at Arbitration and provide testimony which was essential to a case that was solely determined by the arbitrator based in essence on the respective parties credibility, i.e. the Plaintiff' and the accuser (J.B.) and as a result unduly undermined the plaintiff's arbitration rights and procedure as he was not allowed to testify due to the defendant Union's ill-advised decision and failure to comply with its duty of fair representation along with BU complicit in the ill-advised agreement as to ground rules for Arbitration.

17. The Plaintiff received the adverse decision by the Arbitrator on or about Feb. 15, 2023, which was based on which version of events or nonevents to credit as trustworthy that depended almost entirely on the credibility that needed to be provided via the testimony of parties, witnesses, etc. in a live manner as opposed to an arbitration based on simply procedural issues.

18. The Co Defendant, Boston University conducted a flawed investigation with little to no substantive corroboration of one individual's unsupported allegations. Further, the employee making untoward allegations was subsequently terminated by co defendant Boston University, yet Boston University failed to reveal said information nor reconsider its posture in light of the accuser's termination as to Plaintiff, a 15-year veteran employee with an unblemished record prior to the arbitration finding which Plaintiff alleges it had an inherent duty to reveal to the parties and Arbitrator as to its potential ramifications on said accuser's credibility again when said untoward allegations by this co-employee who himself was terminated in 2023, nor consider Plaintiff's 3 witnesses who by affidavit as

long-time coworkers with the defendant were percipient witnesses of his daily activities for many many years, and all corroborated Plaintiff's denial of any wrongdoing.

19. While the matter submitted to arbitration was all about the credibility of the two parties conflicted stories, counsel for Plaintiff (Union) for reasons unbeknownst as well as the co defendant BU was complicit with the notion of filing the arbitration to be determined solely on the papers, rather than allowing Plaintiff a full hearing to assess his and his witnesses and his accuser's credibility. Both defendants partook in this decision to the disadvantage of the Plaintiff precluding his rights to seek justice to right a wrong perpetrated by the defendants.

20. On or about October 19th, 2022, an adverse decision was rendered against Plaintiff from which this timely complaint for relief from the Court stems from.

21. In that decision, the arbitrator stated that Plaintiff had in fact engaged in instances of misconduct and stated that the accuser was in essence believed over Plaintiff despite the absence of any actual corroborating witnesses or testimony.

22. The Arbitrator referenced a failure to appeal the underlying decision inferring that it gave weight to the findings when in reality an appeal could only be made under 4 very limited circumstances; likely a difficult standard to satisfy, which he failed to reference nor that the Plaintiff after immediately contacting the defendant Union post decision was ultimately told by the Union it would file a grievance on his behalf after he personally communicated with and/or went to the Union's Boston location immediately post-decision and anticipated an arbitration that would illicit comprehensive testimony from Plaintiff and percipient witnesses, all of which supported the plaintiff except for the accuser and in fact individuals interviewed by BU on the whole denied any knowledge of observing any wrongdoing yet the co defendant BU choose to ignore the statements and simply sided with the Accuser and allegedly gave him a promotion as well contrary to

Union or University guidelines that had the appearance of a back room deal.

23. The defendant's arbitrator repeated the implication that the Plaintiff's failure to appeal caused a detriment to Plaintiff, and said assessment could not be further from the truth because the standard for appeal in an arbitration matter is extremely narrow in scope and there are only four circumstances where an appeal can be pursued and in light of Plaintiff being told the Union would pursue justice eon his behalf relied on the defendant Union to his detriment..

24. The Plaintiff was advised by the Union that a grievance would be filed on his behalf based on the decision. Plaintiff was under the belief that based under the limitations of a Title IX appeal, his rights would be protected and paid for by the Union by filing a grievance which was filed less than two weeks after the decision and would ultimately lead to representation by the defendant Union that an arbitration would take place.

25. Additionally, to support Defendant, Boston University's, biased findings based on the prior (Tite IX) hearing, the arbitrator made the incorrect analysis that the accuser was credible in his allegations despite never making any complaint of misconduct against Plaintiff until on or about March 18 2021 well over a year after the alleged transgressions by Plaintiff allegedly occurred. And the accuser only did so when faced with disciplinary action for frequent tardiness and not at the time of a performance review as incorrectly suggested by the arbitrator without either defendant rebutting this erroneous finding.

26. Not only did he maintain his employment, Plaintiff alleges that the accuser/co-worker was never disciplined, but actually was rewarded for his actions and received a full-time schedule, according to Plaintiff and in the affidavit of a long time co-worker Osman, provided by Plaintiff which, was not in compliance with Defendants' Union nor BU's hiring protocol.

27. The failure of Boston University to provide any impartiality such as giving weight to

witness statements provided by longstanding employees who interacted with Plaintiff virtually on a daily basis, was improper and to the detriment of Plaintiff's affidavit provided by co-worker Osman Barrero is not even referenced in his exhibits or decision that provided corroboration of plaintiff's version of events.

28. As to the Defendant Union, at the outset, agreeing to an arbitration on the papers meaning no live testimony being presented was a serious error of judgment that defies logic as the entire claim of the Plaintiff presented through his grievance revolves around the credibility of the Plaintiff, the co-worker/accuser, witnesses, none of which would be heard based on the Union's decision to forgo that process. It is illogical where the Defendant, Boston University, was aware as was the Defendant, Union, clearly understood the primary issue was the credibility of the parties and the notion that the Union would even consider conducting an arbitration simply on the papers was illogical and improper and a clear violation of its duty of fair representation to the Plaintiff. BU's complicit participation in a deal to preclude testimony and have the matter determined on the papers should also not be rewarded as it too clearly circumvented the ability to serve justice ein a fair and equitable manner. Typically, such a process would generally occur if there was a procedural issue that was contested by the parties, such that no live testimony was needed, which was unequivocally not the case here.

29. Plaintiff was ready, willing, and able, to testify. Plaintiff was not given the opportunity to take part in the decision to deprive him of testifying and both Plaintiff and his personal counsel went to great lengths to ensure that he would be able to testify which was unilaterally denied by the Union with no reasonable explanation nor his consent.

30. Additionally, at least one of the witness statements provided by Plaintiff's co-worker Osman Barrero was inexplicably redacted, which Plaintiff never knew about until recently receiving the exhibits arising from this Arbitration and was never told by the

Union prior to his receipt.

31. The Union has a duty of fair representation, and there is absolutely no evidence to show that protocol occurred because Plaintiff was deprived the opportunity to testify and cross-examine the accuser and bring long-time co-workers who would attest to his character and have the ability to demonstrate the real motive of the accuser, which was to save his own job.

32. Additionally, when the plaintiff learned that his accuser was recently terminated by BU for performance issues, prior to the arbitrations decision, and despite notifying the Defendant Union, it chose to ignore said critical information relevant to Plaintiff's arbitration which Plaintiff asserted supported his credibility the Union dismissed/refused to entertain in any manner presenting this to the Arbitrator who was undoubtedly unaware of this critical material fact in assessing one's credibility and which the Union determined incorrectly had no bearing on the outcome of the case.

33. It appears that the co defendant BU also was complicit as it too took no action while obviously aware that the accuser was terminated prior to the outcome of the arbitration as understood by the Plaintiff and also failed to raise said critical turn of events to the attention of the arbitrator to the best of Plaintiff's knowledge.

## Legal Standard

34. M.G.L. c. 150 C Section 11. (a) Upon application of a party, the superior court shall vacate an Arbitration award if: (1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law; (4) the arbitrators refused to postpone the hearing upon a sufficient cause being shown therefor or refused to hear

evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five as to prejudice substantially the rights of a party;

35. "Plain error requires appellants to demonstrate: (1) an error occurred (2) which was clear or obvious... (3) affected [his] substantial rights [and] (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings.' " Nat'l Cas. Co. v. First State Ins. Grp., 430 F.3d 492, 499 (1st Cir. 2005).

36. The "duty of fair representation mandates that a union conduct at least a 'minimal investigation' into an employee's grievance." Reynolds v. Steward St. Elizabeth's Med. Ctr. of Bos., Inc., 364 F. Supp. 3d 37 (D. Mass. 2019).

## Application of Legal Standard

37. The Arbitration award was procured by evidence of partiality because the Arbitrator accepted without impartiality the underlying decision of Title IX by Dan Schorr, Esq. adverse to the Plaintiff despite no corroborating witness testimony provided by any other employee witnessing misconduct to the employee making such assertions.

38. The arbitration award was procured by evidence of partiality because the Defendants, Boston University and/or the Union ignored and/or redacted an affidavit in support of Plaintiff on the matter. Plaintiff filed an affidavit in support of his character from an employee at Boston University. This affidavit was not listed as an exhibit in the Arbitration, and it is unclear if the Arbitrator took this affidavit into consideration when rendering its decision.

39. The Arbitrator erred in their decision because the Arbitrator did not consider all pertinent and material information on the matter. For reasons unknown to Plaintiff, his defendant, Union attorney in the arbitration matter filed for arbitration on the papers and the Defendant Boston University upon information and belief was a party complicit seeking such an agreement to the detriment of Plaintiff and to rubber stamp its prior finding a

opposed to ensuring fairness and justice served at Arbitration and as part of the Arbitration customary process. Plaintiff offered an affidavit in support of his credibility in the pending matter. For some reason, the affidavit was redacted, and not considered in the decision as it is not listed as an exhibit in the arbitrator's decision. The Plaintiff pleaded to have introduced multiple affidavits of coworkers willing to provide testimony not originally entertained by the co defendants

40. This mutual decision of the defendants and failure to reveal the accuser's termination from BU's employ all adversely and improperly affected the outcome of the Arbitrator's decision who was never informed by either defendant of the accuser's termination allegedly prior to his Arbitration decision which was plain error perpetrated by the defendants.

41. In applying the plain error rule, the refusal and/or redacted affidavit in support of Plaintiff was a clear and obvious error that affected Plaintiff's rights and impaired the fairness of the Arbitration proceeding. By not allowing Plaintiff to submit an affidavit to support his character in a matter that revolves around credibility, substantially affected Plaintiff's right to a fair arbitration, and due to the refusal and/or redaction of at least one of the proposed affidavits, which impacted the fairness of the arbitration proceeding.

42. The failure of Defendant Boston University to give any weight to Plaintiff's grievance and/or accuser's termination and instead purely relying upon the underlying BU decision was plain error and led to an adverse decision by undue means as further illustrated herein.

43. The Defendant Union failed in its duty of fair representation by not conducting at least a minimal investigation into the accuser. At the outset, the hearing stated that the accuser was in for a performance review, if the Union had conducted even the slightest of investigations in the matter, such as speaking to the Plaintiff it would have been clear that

the accuser was not contacted for a performance review when his complaint was made, but for a disciplinary proceeding based on his frequent tardiness(which Plaintiff had, in fact, told the Union prior to the Arbitration). Had the Union conducted at least a minimal investigation in the matter, this and other pertinent material information such as the accuser not being disciplined and getting a full-time job after Plaintiff was fired and failing to inquire as to the accuser's termination allegedly for performance related issues which should have been uncovered and presented at Arbitration as well as other assertions delineated herein, all satisfying the prerequisites of a blatant failure to provide the proper duty of fair representation which contributed to the demise of the Plaintiff's Arbitration proceeding. BU also had the opportunity to correct this error but chose to stay silent by its blatant omission

## Causes of Action

(Each cause of action specifically incorporates by reference all of those paragraphs previously set forth)

## First Cause of Action

44. This is an action by the Plaintiff, Juan De Los Santos, against Defendant, Boston University for Plain error, as evidenced by its actions relative to its investigation, the plaintiff's grievance and its actions leading up to and including the Arbitration proceeding.

## Second Cause of Action

45. This is an action by the Plaintiff, Juan De Los Santos, against Defendant, SEIU Local 615 32BJ, for failure to comply with its Duty of Fair Representation a sit related to its representation of the plaintiff and its actions leading up to the Arbitration.

## **Demands for Relief**

Wherefore, Plaintiff, Juan De Los Santos, demands judgment against the Defendant, Service Employees International Union, District 615, 32BJ, together with interest, and costs for job reinstatement and/or back pay as to the first cause of action and any other relief deemed just and proper by this court.

46. Plaintiff, Juan De Los Santos, demands judgment against the Defendant, SEIU Local 32BJ, and/or BU as to the second cause of Action together with interest and costs to the second cause of action for monetary damages incurred as a result \and any other relief deemed proper by this Court.

Dated: December 1, 2023

          Juan De Los Santos
          By his Attorney,
          <u>/s/ James E. Neyman</u>
          James E. Neyman (BBO# 555229)
          76 Canal Street, Suite 302
          Boston, MA, 02114
          (617) 723-2627