UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **JUAN DE LOS SANTOS,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **SERVICE EMPLOYEES** ) <br> **INTERNATIONAL UNION** ) <br> **LOCAL 615 32BJ and** ) <br> **BOSTON UNIVERSITY,** ) <br> ) <br> Defendants. ) | Case No. 23-cv-11305-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                           **July 11, 2024**

### I.      Introduction

Plaintiff Juan De Los Santos ("De Los Santos") has filed this lawsuit against Defendants Service Employees International Union Local 615 32BJ (the "Union") and Boston University ("BU").[1]  D. 1-1; 38.  Against the Union, De Los Santos alleges a violation of the duty of fair representation.  Id.  The Union has moved for summary judgment.  D. 27.  For the reasons stated below, the Court ALLOWS the Union's motion.

### II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter

---

[1] The Court has dismissed all claims against the Defendant American Arbitration Association. D. 19.

1

of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

**III.    Factual Background**

The following facts are undisputed unless otherwise noted and are drawn from the Union's statement of material facts.[2]

De Los Santos, a member of the Union, was an employee of BU from September 26, 2006 until November 18, 2021. D. 29 ¶¶ 1-2. On or about March 18, 2021, another BU employee and member of the Union (the "complainant") filed a complaint against De Los Santos alleging that De Los Santos had violated BU's Sexual Misconduct Policy (the "Policy"). Id. ¶ 3. As a result of the allegations, BU initiated a Title IX investigation, which produced an investigation report and culminated in a hearing held on October 25, 2021. Id. ¶¶ 4-5. At the Title IX hearing, De Los Santos was represented by a lawyer, who was designated as his hearing advisor. Id. ¶ 6. Prior to

---

[2] De Los Santos failed to file a response to the Union's statement of material facts as required. Accordingly, the Union's statement of material facts, D. 29, is deemed admitted. Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (providing that "material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties") (quoting D. Mass. L.R. 56.1).

this hearing, all parties were given the opportunity to request witnesses, and all parties indicated that they had no such requests. Id. Ultimately, seven witnesses presented testimony at the hearing. Id.

On November 3, 2021, the Hearing Report was issued, which summarized the factual findings, applied such findings to the Policy and concluded that De Los Santos had violated the Policy. Id. ¶ 7. Shortly thereafter, on or about November 18, 2021, BU informed De Los Santos that his employment would be terminated. Id. ¶ 8. Upon learning of his termination, De Los Santos informed the Union of same, and on or about November 30, 2021, the Union filed a grievance on his behalf. Id. ¶ 9. A grievance meeting was held on January 7, 2022 and BU denied the grievance on January 19, 2022. Id. ¶ 10. In response to BU's decision, the Union sought arbitration of De Los Santos's grievance. Id. ¶¶ 10-11.

The Union and BU submitted a stipulated record to the arbitrator based on all records from the Title IX investigation, transcript of the Title IX hearing and additional affidavits submitted by the Union. Id. ¶ 12; D. 30 ¶¶ 10-12. On De Los Santos's behalf, the Union argued that there was insufficient evidence of a Title IX violation, that the Title IX investigation should have explored the complainant's motivation for filing the complaint and that witnesses that knew De Los Santos were not called. D. 30-9 at 5-6. On February 13, 2023, the arbitrator rendered a decision in favor of BU finding that BU had just cause to terminate De Los Santos. D. 29 ¶ 13; D. 30 ¶ 13; D. 30-9.

## IV. Procedural History

De Los Santos filed this action in the Suffolk Superior Court on March 16, 2023, D. 1-1, and the Union removed this action to this Court. D. 1. The Defendant American Arbitration Association moved to dismiss, D. 13, which the Court allowed, D. 19. De Los Santos moved to amend the complaint to add BU as a new defendant, D. 26, which the Court allowed, D. 31. The

Union has now moved for summary judgment. D. 27. The Court heard the parties on the pending motion and took this matter under advisement. D. 39.

V. Discussion

    A. **Duty of Fair Representation**

The Union argues that De Los Santos presents no genuine issue of material fact that would show that the Union acted arbitrarily and presents no evidence that the Union acted discriminatorily or in bad faith. D. 28 at 7. A union has a duty of fair representation to represent its members in collective bargaining and in the enforcement of any collective bargaining agreement. Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 419-20 (1st Cir. 2005). A union breaches this duty "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Miller v. U.S. Postal Serv., 985 F.2d 9, 11 (1st Cir. 1993) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). A union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." Newbanks v. Cent. Gulf Lines, Inc., 64 F. Supp. 2d 1, 4 (D. Mass. 1999) (quoting Vaca, 386 U.S. at 191). But "mere negligence or erroneous judgment will not constitute a breach of the duty of fair representation." Miller, 985 F.2d at 12.

"[A] union's actions are arbitrary 'only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational.'" Id. (quoting Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67 (1991)). "This standard requires the court to examine objectively the competence of the union's representation." Emmanuel, 426 F.3d at 420. The Court, however, "may not substitute [its] own views for those of the union." Miller, 985 F.2d at 12. "Any substantial examination of a union's performance . . . must be highly deferential . . . because of the well-recognized need to allow unions ample latitude in the performance of their representative duties." Id. (internal

4

citations and quotation marks omitted). Because the Union has an "obligation to balance the competing interests of all union members," Alston v. Int'l Ass'n of Firefighters, Local 950, 998 F.3d 11, 26 (1st Cir. 2021), "[t]he complete satisfaction of all who are represented is hardly to be expected." Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953).

De Los Santos does not claim that the Union acted discriminatorily or in bad faith. Instead, De Los Santos argues that the Union acted arbitrarily by (1) arbitrating "on the papers" instead of proceeding with a hearing, D. 35 at 3, (2) failing to seek out witness affidavits to submit to the arbitrator, id. at 5, (3) redacting the witness affidavits that it did submit to the arbitrator, id. at 6, (4) failing to introduce the audio of the Title IX hearing, id. at 5, and (5) failing to timely communicate updates to De Los Santos while ignoring De Los Santos's requests for same, id. at 6.

### 1.    The Union's Strategic Decisions Were Not Arbitrary

De Los Santos argues that the Union's decision to arbitrate "on the papers" (i.e., by way of a stipulated record and legal briefs instead of a hearing with live testimony) was arbitrary. Id. at 3. De Los Santos argues that because the case rested on the conflicting accounts of De Los Santos and the complainant, live witness testimony, or alternatively witness affidavits, was necessary to bolster De Los Santos's credibility. Id. at 5.

The Union in this case explains that the stipulated record "contained a full and complete documentation of the Employer's investigation leading to the decision to terminate," including "a complete transcript of a hearing in which [De Los Santos], through a lawyer/representative of his own choosing, had the opportunity to challenge the Employer's investigatory record through presentation of his own witnesses and cross-examination of adverse witnesses." D. 28 at 8. Based on this record, the Union argues that it "rationally believed that the relevant factual record had been developed and that the issue of whether the Employer had just cause . . . could be argued

5

without further fact-finding." Id.  Garcia v. Zenith Elecs. Corp., 58 F.3d 1171 (7th Cir. 1995) is instructive on this point.  There, the plaintiff, a union member, was terminated, and the union pursued a grievance on his behalf and hired an attorney, Stanton, to represent the plaintiff in arbitration. Garcia, 58 F.3d at 1175.  The arbitrator ultimately upheld the plaintiff's termination, and the plaintiff alleged in court that the union had breached its duty of fair representation.  Id. Specifically, the plaintiff challenged Stanton's refusal to present the testimony of a colleague, refusal to call the plaintiff to testify, failure to review video footage, and his "perfunctory" handling of the arbitration hearing, among other things.  Id. at 1177.  The court concluded that "[w]hile [plaintiff] may disagree with Stanton's strategy, and while another lawyer might have approached the case differently, it is not [the court's] job to substitute [its] judgment for that of the Union" and "must defer to the Union's strategic choices unless they are irrational, discriminatory or in bad faith."  Id.  The court also held that the plaintiff did "not prove a disregard for his case sufficient to meet the standard imposed on the Union" because "Stanton pursued a rational strategy with sufficient competence and vigor to meet the burden of 'some minimal investigation of employee grievances,' and showed no 'egregious disregard for union members' rights constituting a breach of the union's duty.'"  Id. at 1179 (quoting Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1483 (9th Cir. 1985)).  As in Garcia, the Court cannot substitute its judgment for that of the Union and will defer to the Union's rational, strategic choice to proceed on the papers.

The Court's evaluation of the Union's performance must be "highly deferential" because "the collective bargaining system necessarily 'subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit.'"  Alston, 998 F.3d at 26 (quoting Air Line Pilots Ass'n, 499 U.S. at 78 and Vaca, 386 U.S. at 182).  This deference "recognizes [the Union's] obligation to balance the competing interests of all union members."  Id.  "The union

represents the majority of employees, even while it is representing a single employee in a grievance process. Thus even during an individual grievance procedure, the union's own credibility, its integrity as a bargaining unit and the interests of all its members may be at stake." Garcia, 58 F.3d at 1176. Accordingly, a union is allowed "great latitude in determining the merits of an employee's grievance and the level of effort it will expend to pursue it.'" Miller, 985 F.2d at 12.

The Union here explained that its decision to proceed on a stipulated record was at least in part based on its reluctance to treat the complainant, another Union member, as hostile on the witness stand to preserve good relations with all of its members. D. 28 at 8. Based on this reasoning, the Union's decision to proceed to arbitration on a stipulated record was not irrational or illogical. As in Alston, 998 F.3d at 27 (concluding that "it was the Union's obligation both to protect its members from perceived threats to their safety and to ensure that any discipline meted out to [the plaintiff] comported with the [collective bargaining agreement]," and as long as the Union balances those competing interests, it does not act in bad faith), the Union here has an obligation to balance the collective interests of its members. As the Union notes, De Los Santos had already had a full opportunity to be heard, be represented by counsel, introduce witnesses of his choice and question adverse witnesses, including the complainant, and the arbitrator was provided with a full record of that proceeding to independently evaluate the testimony presented. The Union's decision to proceed on the papers was thus not arbitrary, and the Court must provide deference to the Union's balancing of the competing interests of its members, such as its choice to represent De Los Santos without subjecting the complainant to hostile cross-examination. See Garcia, 58 F.3d at 1176.

De Los Santos also argues that the Union acted arbitrarily by failing to seek out witness affidavits to submit to the arbitrator and redacting the witness affidavits that it did submit. D. 35

at 6-7.  De Los Santos wanted to introduce testimony about the fact that the complainant was eventually disciplined and terminated for poor work performance to bolster his argument that the complainant had motive to invent his account.  Id. at 7; D. 35-1 at 20-21.  Although the Union expressed that it had a different view on "the value of testimony relating the [sic] character and/or work ethic of the purported victim," D. 35-1 at 19, it nonetheless agreed to consider submitting any affidavits that De Los Santos collected, id. at 20, and indeed did include (albeit redacted as to the Osman Barrera affidavit) a few of those affidavits to highlight De Los Santos's length of service, character, reputation and work ethic.  See D. 30-8.

The Union's decision to redact the sections of the Osman Barrera affidavit that discussed the complainant's work ethic and to keep only the positive remarks about De Los Santos, compare D. 30-8 at 4-6, with D. 35-1 at 29-31, was not irrational or arbitrary given the Union's interest in balancing its representative duties to its members.  See Alston, 998 F.3d at 26-27.  Despite its decision to exclude testimony about the complainant's work performance, the Union still argued that "[t]he investigation did not sufficiently explore evidence bearing on the motive the claimant had to invent his account" and that "[t]he issue should have been further explored."  D. 30-9 at 6.  The arbitrator considered this argument and ultimately concluded that he did "not accept the Union argument that [the complainant] invented his account to explain attendance issues in advance of a performance review."  D. 30-9 at 9.

De Los Santos is also dissatisfied with the Union's decision not to introduce the audio of the Title IX hearing, which he argues would "under any objective analysis" show that the complainant was not credible.  D. 35 at 5.  That the arbitrator would have weighed the parties' credibility differently with the inclusion of this audio is speculative.  Although the arbitrator did not receive the audio, the stipulated record included the written transcript of the Title IX hearing.

8

D. 30 ¶ 11; D. 30-6.  The Union's decision to exclude the audio was not "so far outside a wide range of reasonableness as to be irrational." Miller, 985 F.2d at 12 (internal citation and quotation marks omitted).

Moreover, the Union was not required to pursue De Los Santos's preferred strategy or theory of the case.  See Emmanuel, 426 F.3d at 421 & n.3.  "While the Union did not canvass as many employees as [plaintiff] may have hoped, such action is not required to fairly represent the interests of a union member." Mensah v. Newton Buying Corp., 927 F. Supp. 518, 523 (D. Mass. 1996).  To the extent that De Los Santos may have been disappointed with the Union's strategic decisions, "disappointment, without more, does not give rise to a claim against the union for breach of its duty of fair representation." Williams v. Sea-Land Corp., 844 F.2d 17, 21 (1st Cir. 1988).  Even if the Court concludes that another lawyer would have taken De Los Santos's preferred case approach or introduced all of the evidence De Los Santos claims was necessary, such as additional witness affidavits or live witness testimony regarding both De Los Santos's good character and the complainant's allegedly questionable work ethic, the Union's decisions not to do so, at most, "amounted to mere negligence or a mistake in judgment for which the Union cannot be held liable." Dirring v. Lombard Bros., Inc., 619 F. Supp. 911, 916 (D. Mass. 1984).

> 2. *Inclusion of Witness Testimony or Witness Affidavits Would Not Change Outcome of the Arbitration*

De Los Santos also cannot show on this undisputed record that the inclusion of any witness testimony or other affidavits would have changed the outcome of the arbitration.  He does not suggest or offer evidence to show that these potential witnesses or affiants were percipient witnesses to any of the incidents alleged and could corroborate that he did not engage in the alleged misconduct.  See Emmanuel, 426 F.3d at 420 (concluding that plaintiff, a school bus driver, had not demonstrated that any employees not interviewed would have provided beneficial information

that would have brought about a different outcome because "none of the witnesses was on the bus at the time of the accident or otherwise was able to offer evidence to corroborate [plaintiff's] assertion that the bus was defective" at the time of the crash); Crentsil v. State Healthcare & Rsch. Emps., No. 16-40030-TSH, 2017 WL 5760315, at *7 (D. Mass. Sept. 26, 2017) (holding that plaintiff "cannot sustain a claim of breach of the duty of fair representation based on [the union's] failure to interview his co-workers" because "none of his co-workers were in the room with him . . . during the alleged abuse" and plaintiff was not "aware of any particular information his co-workers could have given in his support"); cf. Black v. Ryder/P.I.E. Nationwide, 15 F.3d 573, 585 (6th Cir. 1994) (affirming jury verdict that the union breached its duty of fair representation where it failed to call a witness to testify whose "testimony was sufficiently significant that it would likely have altered the results of the grievance proceedings").

### 3. The Union Did Not Act Arbitrarily in Its Communications with De Los Santos

De Los Santos argues that the Union acted arbitrarily by failing to communicate and respond to his requests for updates in a timely manner. In support of this argument, De Los Santos relies upon Goncalves v. Labor Rels. Comm'n, 43 Mass. App. Ct. 289 (1997). In Goncalves, the union pursued a grievance on behalf of the plaintiff, which the employer denied. Goncalves, 43 Mass. App. Ct. at 292. The union did not notify plaintiff or his counsel of the denial of the grievance nor of the union's decision to not pursue the grievance further until nearly two years later despite plaintiff's request for an update. Id. at 292-93. The union's policy required a written waiver from union members who no longer wanted the union to represent them in a grievance, and in the absence of such waiver, "it was the union's responsibility to continue to process the grievance." Id. at 293. The union did not obtain a written waiver from plaintiff prior to deciding to no longer pursue the matter. Id. The court concluded that "the union's failure to follow its own

10

policies governing its processing of Goncalves's grievance, its failure to inform him of the status of his grievance, and its failure to respond to his attorney's requests for information constitute nothing less than 'grossly inattentive or grossly negligent' conduct, thereby mandating a finding that the union violated its duty of fair representation." Id. at 297 (quoting Nat'l Ass'n of Gov't Emps. v. Labor Rels. Comm'n., 38 Mass. App. Ct. 611, 613 (1995)).

The Union's conduct in this case, however, does not rise to the same level of grossly inattentive or grossly negligent conduct in Goncalves. Unlike Goncalves, where the union did not notify the plaintiff of the decision in the grievance proceeding for nearly two years and failed to follow its own processes as to processing grievances, here the Union representative wrote to De Los Santos with updates on the status of the arbitration decision, for one example, noting that the arbitrator had sought a second extension until February 15, 2023 to provide a decision on the arbitration and assuring De Los Santos that the Union would let him know if a decision was rendered earlier. D. 35-1 at 12. Unlike Goncalves, where the union abandoned the case without notice to the plaintiff, in violation of its own policy, the Union here pursued De Los Santos's case by proceeding to arbitration, and there is no evidence that the Union violated any of its policies in its representation of De Los Santos.

Even assuming De Los Santos's allegations of delay in Union communications, the Union did not neglect or ignore De Los Santos's claim and proceeded through the grievance process and arbitration on a reasonable timeline. On November 18, 2021, BU informed De Los Santos that his employment would be terminated. D. 29 ¶ 8. De Los Santos then informed the Union of his termination, and on November 30, 2021, the Union filed a grievance on behalf of De Los Santos. Id. ¶ 9. After BU denied the grievance on January 19, 2022, id. ¶ 10, the Union moved the matter to arbitration. D. 29 ¶ 11; D. 30-9 at 4. The Union and BU agreed to submit arbitration briefs by

11

December 2, 2022.  D. 30-9 at 5.  The arbitrator delivered the decision on February 13, 2023.  D. 30-9 at 10.  Accordingly, De Los Santos cannot show that the Union violated its duty of fair representation.  Cf. Soto Segarra v. Sea-Land Serv., Inc., 581 F.2d 291, 295 (1st Cir. 1978) (finding breach of duty of fair representation in union's failure to respond to employee's repeated requests to process his grievance and inaction in investigating and evaluating the merits of the employee's claim).

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS the Union's motion for summary judgment, D. 27.

**So Ordered.**

                                                 /s Denise J. Casper
                                                 United States District Judge